**UNITED STATES of America,**
**Appellee,**

v.

**James C. INSINGA, Defendant–**
**Appellant.**

**No. 07–3442–cr.**

United States Court of Appeals,
Second Circuit.

Aug. 12, 2008.

William T. Easton, Esq., Rochester, New York, for Appellant.

Steven D. Clymer, Assistant United States Attorney (Kevin P. Dooley, Assistant United States Attorney, on the brief), for Glenn T. Suddaby, United States Attorney for the Northern District of New York, Syracuse, New York, for Appellee.

PRESENT: Honorable REENA RAGGI, Honorable RICHARD C. WESLEY, Honorable DEBRA ANN LIVINGSTON, Circuit Judges.

## SUMMARY ORDER

Defendant James C. Insinga, who pleaded guilty to one count of conspiring to use fire to commit a felony, *i.e.,* mail fraud, *see* 18 U.S.C. § 844(m); one count of aiding and abetting the use of fire to commit mail fraud, *see id.* §§ 844(h) & 2; and one count of conspiracy to commit arson, *see id.* § 844(i), appeals from that part of his judgment of conviction sentencing him to 120 months' imprisonment, a term of incarceration dictated by the consecutive five-year mandatory minimum terms applicable to the last two counts of conviction. Insinga asserts that the government breached his plea agreement by failing to move pursuant to 18 U.S.C. § 3553(e) for a sentence below the statutory minimums. He submits that the district court erred in (1) deciding this question against him without holding an evidentiary hearing, and (2) failing to compel the government to make a § 3553(e) motion. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to dismiss.

### I. *Insinga's Appellate Waiver*

Pursuant to his plea agreement, Insinga waived his right to appeal his conviction and any sentence of imprisonment of 136 months or less. Such appellate waivers are generally enforceable although certain exceptions apply; notably, a defendant's waiver of his right to appeal will not be enforced "if the Government breaches the plea agreement." *United States v. Garcia,* 166 F.3d 519, 521 (2d Cir.1999); *see also United States v. Rosa,* 123 F.3d 94, 98 (2d Cir.1997). Because we conclude in the next part of this order that no such breach occurred in this case, and because breach is the only argument Insinga makes to avoid enforcement of his waiver, we dismiss the appeal based on waiver.

### II. The Alleged Government Breach

#### A. *Standard of Review*

Insinga argues that his plea agreement obligated the government to file a § 3553(e) motion. The government submits that this textual argument should be reviewed only for plain error because it was not presented in the district court.[1] To apply plain error review, we would have to conclude not only that the textual argument was not raised in the district court but that the government's "impending violation of a plea agreement [was] so clearly anticipated that [ ] defendant's failure" to raise the particular objection "can fairly be taken to be a waiver." *See United States v. Corsentino,* 685 F.2d 48, 50 (2d Cir.1982). *But see United States v. Griffin,* 510 F.3d 354, 360 (2d Cir.2007) (holding that absent clear anticipation of breach "defendant is not required to object to the violation of a plea agreement at the sentencing hearing" (internal quotation marks omitted)). While the government's waiver argument is not without record support, we need not conclusively resolve the issue because, even when we interpret Insinga's plea agreement "*de novo* and in accordance with principles of contract law," resolving any ambiguities "in favor of the defendant," *id.* at 360 (internal quotation marks omitted), we conclude that his appeal is without merit.

---

1. In the district court, Insinga argued that (1) at the time he entered into the plea agreement, he reasonably expected that the government would make a § 3553(e) motion if he cooperated with authorities; (2) debriefing FBI agents promised that "he would be taken care of" at the time of sentencing; and (3) the government made § 3553(e) motions for his co-defendants.

### B. The Agreement Did Not Obligate the Government to File a § 3553(e) Motion

▇▇▇▇ Insinga submits that the plea agreement effectively promises a § 3553(e) motion in consideration for his cooperation. We disagree. Certainly, Insinga's plea agreement contains no express promise that the government "will" file a § 3553(e) motion if it determines the defendant has provided substantial assistance, such as we frequently see in other criminal cases. *See, e.g., United States v. Roe*, 445 F.3d 202, 207 (2d Cir.2006); *United States v. Padilla*, 186 F.3d 136, 140–41 (2d Cir. 1999). Rather, Insinga's agreement makes a far narrower promise with respect to the sentencing reduction that will be sought in return for his substantial assistance, specifically the government "will recommend a downward departure" pursuant only "to § 5K1.1" and only "with respect to the Defendant's plea to Count One," the count of conviction carrying no mandatory minimum sentence. Plea Agreement at 10, ¶ 8.g.

Insinga submits that this promise must be construed to imply a twin obligation to file a § 3553(e) motion; otherwise, § 5K1.1 affords him no benefits because his Guidelines range on Count One was less than the mandatory minimums required on the other two counts of conviction (Counts Three and Four) and was not required to be imposed consecutively to those minimum sentences. Insinga points us to *United States v. Ramsey*, 503 F.Supp.2d 554 (N.D.N.Y.2007), a case in which the district court concluded that a promise to file a § 5K1.1 motion was properly construed to include a promise to file a

§ 3553(e) motion because, otherwise, the defendant would receive no benefit from his cooperation. We need not here decide whether we agree with *Ramsey's* reasoning because the facts in this case are distinguishable in an important respect. In the next three sentences of paragraph 8.g of Insinga's plea agreement, the government makes plain that Insinga will receive an additional sentencing consideration—different from the § 5K1.1 benefit that attaches to Count One—with respect to Counts Three and Four of his conviction. The plea agreement states that, in return for Insinga's cooperation, the government will accept guilty pleas to two five-year mandatory minimum counts and dismiss a final count requiring an additional ten-year minimum term.

> Statutory mandatory minimum sentences apply in connection with Counts Three and Four. The U.S. Attorney's Office makes clear in this plea agreement and the Defendant understands that *the ultimate dismissal of count Two* (a conviction of Defendant for Count Two would require the imposition of an additional 10 year consecutive sentence) *is the consideration being given to Defendant in exchange for his cooperation* as outlined in paragraph 7 above. The Defendant enters this plea knowing that he is facing five year statutory minimum sentences on Counts Three and Four, which must be served consecutively.

*Id.* (emphasis added).[2]

To the extent the highlighted sentence ends with a reference to "cooperation as outlined in paragraph 7 above," the government submits that the numerical refer-

---

**2.** In light of our *de novo* interpretation of the Plea Agreement to promise Insinga significant consideration for his cooperation—distinct from § 5K1.1 and § 3553(e)—with respect to the mandatory minimum sentences he could receive on conviction, we need not address the government's argument that the parties were mutually mistaken as to the possible benefits Insinga might receive from a § 5K1.1 motion with respect to Count One.

ence is an obvious typographical error because paragraph 7 makes no reference to Insinga's cooperation, those obligations being set forth in paragraph 4. *See Nat'l Am. Corp. v. Fed. Republic of Nigeria,* 597 F.2d 314, 320–21 (2d Cir.1979) (rejecting appellant's effort to identify contract "ambiguity" in an omission that was "obviously a typographical error"). We agree. Paragraph 7 states that, if Insinga's guilty plea were ever vacated or withdrawn, the admissions could be used against him notwithstanding Fed.R.Crim.P. 11(f) and Fed. R.Evid. 410. Insinga's attempt to characterize this waiver as "cooperation" lacks any foundation in the agreement's text or in the common parlance of the criminal law. While we must construe all ambiguities in a plea agreement in favor of the defendant, that rule does not require us to adopt far-fetched constructions. Indeed, Insinga's construction runs afoul of other clear language in the agreement emphasizing that "Defendant understands that he already received a substantial benefit *for his cooperation* by virtue of the agreement not to pursue other serious potential charges, including Count Two, which would require the imposition of an additional statutory mandatory minimum sentence." Plea Agreement at 10, ¶ 8.g(i) (emphasis added).

To the extent Insinga nevertheless attempts to identify ambiguity in references made to § 3553(e) in ¶¶ 8.g(ii) and 10.c(iii) of the Plea Agreement, his argument fails because those provisions only reserve the government's right to refuse to move for departures under "U.S.S.G. § 5K1.1 and/or 18 U.S.C. § 3553(e)" in the event Insinga breached the agreement. While such a reservation might be construed favorably to Insinga to indicate that the government had not expressly foreclosed the possibility of making a § 3553(e) motion in his case, that is not enough to equate a possible government motion with

a required one. *See generally Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992) (distinguishing between government's power and its duty to file sentence reduction motion when defendant has provided substantial assistance).

Accordingly, we conclude that the district court properly declined to compel the government to file a § 3553(e) motion.

## C. *The District Court's Decision Not to Hold a Hearing*

█ Insinga submits that the district court erred in ruling on his compulsion order without conducting an evidentiary hearing. In light of our *de novo* determination that the plea agreement cannot be construed to obligate the government to file a § 3553(e) motion in return for Insinga's substantial assistance, this argument merits little discussion.

We nevertheless note that, to the extent Insinga sought a hearing to assert his own subjective expectation that the government would make a § 3553(e) motion on his behalf, the relevant facts were presented to the court by defense counsel. A sentencing court enjoys considerable discretion in deciding when to accept evidence by proffer and when to hear live testimony, and we identify no abuse of discretion in its decision on this point. *See, e.g., United States v. Olvera,* 954 F.2d 788, 792 (2d Cir.1992).

Insofar as Insinga sought a hearing to examine FBI agents as to promises of sentencing consideration allegedly made to him outside the plea agreement, that possibility was irrelevant in light of the agreement's integration provision. *See* Plea Agreement at 16, ¶ 15 ("No promises, agreements, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into

unless memorialized in writing and signed by all parties."); *United States v. Lenoci,* 377 F.3d 246, 258 (2d Cir.2004) ("Where ... the Government incorporates into the plea agreement an integration clause expressly disavowing the existence of any understandings other than those set forth in the plea agreement, a defendant may not rely on a purported implicit understanding in order to demonstrate that the Government is in breach." (internal quotation marks omitted)).

Finally, no hearing was necessary to demonstrate that § 3553(e) motions were made on behalf of co-defendants because both the fact of those motions and the relevant circumstances were known to the district judge. Indeed, Insinga's counsel appears to have withdrawn his request for an evidentiary hearing on this subject. *See* Sentencing Tr. at 7 (Aug. 7, 2007) (stating that if, because of district judge's involvement in co-defendant's sentences, judge felt "that [he did not] need a hearing, then that's fine"). Whether or not this statement constitutes waiver, as argued by the government, the district court did not err in declining to pursue the matter further at a hearing. *See, e.g., Nichols v. United States,* 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) ("As a general proposition, a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." (internal quotation marks omitted)); *United States v. Miller,* 116 F.3d 641, 685 (2d Cir.1997) ("[T]he sentencing court is entitled to rely on any type of information known to it."); *United States v. Carmona,* 873 F.2d 569, 574 (2d Cir. 1989) ("It is not a denial of due process for the trial judge, when determining sentence, to rely on evidence given by witnesses whom the defendant could neither confront nor cross-examine.").

## III.   *Conclusion*

Because we identify no error in the challenged actions of the district court and no breach of the plea agreement by the government, we conclude that Insinga's appellate waiver is enforceable against him and, accordingly, we order that this appeal is DISMISSED.